UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ANTHONY FRANCHI,**
  *derivatively on behalf of Veru Inc.,*

    **Plaintiff,**

    v.                                     Case No. 23-CV-1164-SCD

**MITCHELL STEINER, MARIO EISENBERGER,
HARRY FISCH, MICHAEL L. RANKOWITZ,
GRACE HYUN, LUCY LU,** and
**MICHELE GRECO,**

    **Defendants,**

and

**VERU INC.,**

    **Nominal defendant.**

---

**PHILIP RENBARGER,**
  *derivatively on behalf of Veru Inc.,*

    **Plaintiff,**

    v.                                     Case No. 23-CV-1291-SCD

**MITCHELL STEINER, MARIO EISENBERGER,
HARRY FISCH, GRACE S. HYUN,
LUCY LU, MICHAEL L. RANKOWITZ,** and
**MICHELE GRECO,**

    **Defendants,**

and

**VERU INC.,**

    **Nominal defendant.**

---

# DECISION AND ORDER ON DEFENDANTS' MOTION TO STAY

This case is a consolidated shareholder derivative action filed on behalf of nominal defendant, Veru Inc., against several of the company's officers and directors. The shareholders allege that the officers and directors breached their fiduciary duties to Veru and committed other violations in connection with the company's development of a new drug that it believed could help treat patients suffering from the 2019 coronavirus disease. That alleged misconduct is also the subject of litigation in other courts, including a securities fraud action and two other shareholder derivative actions. The defendants have moved to stay this derivative action pending final resolution of both the securities action and the first-filed derivative action. Pausing discovery in this case until the court in the securities action resolves a pending motion to dismiss will best balance the competing interests of the parties and the interest of the judicial system. Accordingly, I will grant in part and deny in part the defendants' motion.

## BACKGROUND[1]

Veru Inc. is a biotechnology company based in Miami, Florida, and incorporated in Wisconsin. The company developed a drug that it believed could be used to treat hospitalized COVID-19 patients who had a high risk for acute respiratory distress syndrome. After conducting some clinical trials, Veru announced that interim data showed promising results. The company also suggested that the U.S. Food and Drug Administration was completely on board, though behind the scenes the agency expressed reservations about the company's trials. Veru's stock price skyrocketed after its pronouncements. The following month, Veru requested

---

[1] I take this background information from the complaint filed in each case, ECF No. 1 in both the Franchi action and the Renbarger action; the parties' briefs, ECF Nos. 26, 37, and 38 in the Franchi action; and the attachments to the Miller declaration, ECF Nos. 27-1 to 27-8 in the Franchi action.

emergency use authorization from the FDA. However, the FDA's advisory committee voted against granting the request, effectively killing its chance of approval and causing Veru's stock price to plummet.

Lawsuits followed. On December 5, 2022, a shareholder filed a class action securities fraud case in the Southern District of Florida against Veru and its executive officers. That action alleges that the company made several knowingly false and misleading public statements concerning its private communications with the FDA regarding the request for emergency use authorization. Discovery in the securities action has been stayed pending resolution of a motion to dismiss filed by the company and its executive officers.

Shareholders also filed derivative actions on behalf of Veru against the company's executive officers and directors. The first derivative action was filed in Florida state court on July 7, 2023. It asserts claims for breach of fiduciary duty, waste of corporate assets, and unjust enrichment. That action has been stayed pending final resolution of the securities action. After the Florida derivative action was stayed, shareholders filed two derivative actions in this court. Anthony Franchi filed his derivative action on September 1, 2023. A few weeks later, Philip Renbarger filed a substantially similar derivative action. Both actions name as defendants the same executive officers and directors: Mitchell Steiner, Mario Eisenberger, Harry Fisch, Michael L. Rankowitz, Grace Hyun, Lucy Lu, and Michele Greco. And both actions assert claims for breach of fiduciary duty and unjust enrichment. (The Renbarger complaint also asserts claims for aiding and abetting, gross mismanagement, waste of corporate assets, and securities fraud.) I granted the plaintiffs' unopposed motion to consolidate the two cases, and all parties subsequently consented to the jurisdiction of a

magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). A fourth shareholder derivative action was filed in October 2023 in the Southern District of Florida.

On November 20, 2023, the defendants moved to stay this consolidated action until other related cases are fully litigated. The plaintiffs oppose the requested stay.

## DISCUSSION

The defendants seek to stay this action pending final resolution of both the securities action and the Florida state court derivative action.

I. **Whether the Court Should Stay This Action in Favor of the Securities Action Filed in Florida Federal Court**

District courts have the inherent power to stay litigation pending the outcome of a related proceeding in another forum. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "In deciding whether to grant a stay, courts will 'balance the competing interests of the parties and the interest of the judicial system.'" *In re Groupon Deriv. Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012) (quoting *Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011)). This balancing generally involves considering three factors: "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *Id.* (citations omitted). "'[I]f there is even a fair possibility that the stay . . . will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity in being required to go forward.'" *Id.* (quoting *Landis*, 299 U.S. at 255).

A. **Simplification of issues**

The defendants insist that staying this action would simplify the issues in question. According to the defendants, the relief the plaintiffs seek here is contingent on the outcome

4

of the securities action. The defendants also contend that the outcome of the securities action will determine the scope and course of the pending derivative actions. For example, the defendants assert that, if the securities action were dismissed, then all the derivative actions—including this one—would become moot.

The plaintiffs argue that resolving the securities action would not moot this case because the plaintiffs allege that the individual defendants committed breaches of fiduciary duty that are separate and apart from any misstatements by them. According to the plaintiffs, the Veru board clearly violated Wisconsin law when it refused to investigate its directors' and officers' conduct concerning the failed COVID drug. That issue, the plaintiffs say, is not relevant in the securities action and calls for relief (e.g., corporate reforms) beyond simply damages for past harm. The plaintiffs maintain that the Veru board members' knowledge and conduct about certain misleading statements also are not at issue and are irrelevant in the securities action.

Although the issues in this action and the securities action do not completely overlap, the claims here do largely depend on the alleged misstatements by the individual defendants. The plaintiffs repeatedly allege in their complaints that the individual defendants made false and/or misleading statements concerning the company's clinical trials and the company's interactions with the FDA. *See* Franchi Compl. ¶¶ 3, 36–44; Renbarger Compl. ¶¶ 3, 27, 45–65. Those alleged misstatements underpin all the plaintiffs' claims. *See* Franchi Compl. ¶¶ 61–65; Renbarger Compl. ¶¶ 93–121. As just one example, Franchi explicitly alleges that "[t]he Individual Defendants violated their fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to Veru shareholders materially misleading

and inaccurate information through, *inter alia*, SEC filings, press releases, conference calls, and other public statements and disclosures as detailed herein." Franchi Compl. ¶ 61.

Moreover, the plaintiffs provide no authority to support their apparent argument that the decision not to investigate the plaintiffs' pre-litigation demand while the securities action is ongoing constitutes an independent breach of fiduciary duty. The plaintiffs allege that the defendants' inaction violated section 180.0742 of the Wisconsin statutes. That statute generally requires shareholders to make a written demand to the corporation prior to commencing a derivative proceeding and to wait ninety days after making the demand before filing suit. *See* Wis. Stat. § 180.0742. The statute also expressly contemplates that a corporation may reject a shareholder demand, in which case the shareholder need not wait out what's remaining of the ninety days: "No shareholder . . . may commence a derivative proceeding until . . . [n]inety days expire from the date on which the demand was made, unless the shareholder . . . is notified before the expiration of 90 days that the corporation has rejected the demand." *Id.* A written demand therefore is a prerequisite to suit; however, nothing in the statute suggests that refusing to investigate a pre-suit demand would support an independent cause of action.

Resolving the securities action—or at least the motion to dismiss pending there— would significantly simplify the scope of the individual defendants' liability in this case. Like the complaints here, the securities complaint alleges that Veru executive officers made several false and/or misleading statements or omissions concerning the company's clinical trials and private communications with the FDA regarding the emergency use authorization request for its new COVID drug. *See* Miller Decl. Ex. D. [hereinafter "Ewing Am. Compl."], ¶¶ 3–11, 94–117. According to the shareholders there, those deceitful actions constitute federal

securities fraud. *See id.* ¶¶ 172–91. Veru and its executive officers have moved to dismiss that complaint, arguing (among other things) that all the challenged statements were true when made and are not materially misleading. *See* Defs.' Mot. 11–18, ECF No. 52 in *Ewing v. Veru Inc.*, No. 1:22-cv-23960-KMW-LMR (S.D. Fla. Sept. 15, 2023). If the court accepts that argument, it's unclear what, if anything, would remain of this derivative action. *See Brudno v. Wise*, No. Civ. A. 19953, 2003 WL 1874750, 2003 Del. Ch. LEXIS 35, at *12–13 (Del. Ch. Apr. 1, 2003) (granting motion to stay a shareholder derivative action in favor of a securities action because the derivative action largely turned on the outcome of the securities action). Thus, this factor favors granting a stay.

### B. Litigation burden

Granting a stay would also promote judicial economy. Both actions involve similar parties and substantially similar factual allegations. *Compare* Franchi Compl. and Renbarger Compl. *with* Ewing Am. Compl. Although the derivative action names several individual defendants who are not subject to the securities action, "the parties in both cases need not be perfectly aligned for the court to issue a stay." *In re Groupon*, 882 F. Supp. 2d at 1049–50 (citations omitted). The shareholders in each case also rely on the same sources for the allegedly misleading conduct, including an April 2022 investor call, press releases Veru issued in May 2022, and the company's 2022 SEC filings. *Compare* Franchi Compl. ¶¶ 3–14, and Renbarger Compl. ¶¶ 45–65 *with* Ewing Am. Compl. ¶¶ 94–117. And, while the claims in the securities case differ from the claims asserted here, both actions share a common, predominant legal issue—whether Veru and its executive officers misled its shareholders and the public about its development of a new drug to treat COVID patients.

7

Given the overlapping parties, factual allegations, and legal issues, staying this action in favor of the securities action "would preserve judicial resources and reduce the litigation burden on the parties and the court." *In re Groupon*, 882 F. Supp. 2d at 1051. This case has just begun, and the defendants have yet to answer the plaintiffs' complaints. In contrast, the motion to dismiss in the securities action has been fully briefed since mid-February. This court and the parties in this case may avoid potentially duplicative efforts if we pause briefly to await a decision on that motion.

### C. Balancing of harms

The plaintiffs argue that staying this action in favor of the securities action would prejudice them and Veru. According to the plaintiffs, the securities action likely will take years to resolve, resulting in delayed justice for Veru and its shareholders. The plaintiffs allege that the individual defendants caused substantial harm to Veru and assert that the company has an interest in recovering those damages in as timely a manner as possible. The plaintiffs also note that, in addition to recovering damages for past harm, they seek corporate reforms to prevent against ongoing and future harm. Those reforms, the plaintiffs say, can be implemented now and should not wait for the securities action. The plaintiffs further contend that a lengthy stay would cause discovery issues. For example, the company would have to re-search document repositories, re-depose witnesses, and re-hash old discovery disputes. A stay also may result in loss of evidence, as memories fade and witnesses may become unavailable. The plaintiffs insist that the better approach is to set the pleadings first and then proceed in both cases with coordinated discovery.

The defendants, on the other hand, argue that proceeding with this action now would create a significant hardship for them and for Veru. The company would be forced to divert

its time, attention, and financial resources from the securities action and be compelled to litigate related issues in two separate forums. The defendants say the company also would be forced to take inconsistent litigation positions. For example, the company argues in the securities action that its executive officers did not engage in any wrongdoing, while here the plaintiffs—purportedly on Veru's behalf—allege that the same conduct by the company's officers and directors violated the law. Permitting this action to go forward, the defendants say, would also force the defendants to incur the risk of inconsistent results, including at a considerable cost to Veru. According to the defendants, granting a stay is the only way to mitigate this prejudice.

The competing harms identified by the parties can be mitigated with a measured, middle-ground approach: staying discovery in this action until the court in the securities action resolves the motion to dismiss filed in that case. That motion has been fully briefed for about two months, and so it should be decided shortly, alleviating the plaintiffs' concern about a lengthy delay. Pausing discovery while we wait for that decision also would alleviate the defendants' concern about diverting the company's financial and management resources. And it would avoid the risk of inconsistent litigation positions for the time being, allowing the court to address actual conflicts once they arise. Moreover, resolution of that motion may significantly narrow the issues in our case. This court would then be in better position to analyze whether a further stay is necessary or to coordinate discovery with the securities action.

Other courts have recognized the advantages of this prudential approach, including in several of the cases the parties rely upon. *See, e.g.*, *In re Groupon*, 882 F. Supp. 2d at 1047–52 (staying derivative action pending a ruling in the securities action on a yet-to-be-filed motion

9

to dismiss); *In re Galena Biopharma, Inc. Deriv. Litig.*, 83 F. Supp. 3d 1033, 1042–46 (D. Or. 2015) (staying discovery in derivative action until securities court resolves pending motions to dismiss); *In re Am. Apparel S'holder Deriv. Litig.*, No. CV 10-06576 MMM (RCx), 2012 WL 9506072, 2012 U.S. Dist. LEXIS 146970, at *151–68 (C.D. Cal. July 31, 2012) (finding parties' concerns sufficiently mitigated by a stipulation to stay discovery in derivative action pending resolution of motions to dismiss in the securities action); *Janklow v. Alutto*, No. 18-457-CFC, 2018 WL 6499869, 2018 U.S. Dist. LEXIS 208276, at *3–5 (D. Del. Dec. 11, 2018) (granting motion to stay derivative action until court resolves motion to dismiss filed in the securities action).

## II. Whether the Court Should Stay This Action in Favor of the Derivative Action Filed in Florida State Court

The defendants also request that I stay this action pending resolution of the first-filed derivative action, which was filed in state court in Florida about two months before Franchi filed this one. They seek a stay under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), arguing that a stay would conserve judicial resources and avoid piecemeal litigation. The plaintiffs argue that this case does not present exceptional circumstances that warrant taking a backseat to the Florida state court.

I will decline to enter a *Colorado River* stay at this time. The Florida state court has stayed its derivative action until final resolution of the securities action. The better approach, as recognized by other courts, is to revisit the propriety of a stay—both in favor of the securities action and in favor of the Florida state court derivative action—after the court in the securities action resolves the motion to dismiss.

10

## CONCLUSION

For all the foregoing reasons, the court **GRANTS in part** and **DENIES in part** the defendants' motion to stay, ECF No. 25. The court **STAYS** discovery in this action pending resolution of the motion to dismiss filed in the securities action. The defendants shall inform this court within five days of that decision. In the meantime, the defendants shall have until thirty days after the date of this decision and order to respond to the plaintiffs' complaints.

**SO ORDERED** this 23rd day of April, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge